## COMMONWEALTH *vs.* ROLLIN DOANE.

A defendant indicted for larceny, in whose possession a portion of the cargo of a vessel is found, under circumstances which, if unexplained, would authorize a jury to presume a felonious taking by him, is not entitled, in order to negative the inference of an intent to steal, to give evidence of a custom for the officers of vessels to appropriate a small part of the cargo to themselves, or to prove that instances had occurred, in which the mates of vessels, under a claim of right, had appropriated to themselves parts of the cargoes in their possession. Such evidence is inadmissible, because the custom, which it purports to prove, is wanting in the elements of a legal custom, and cannot be sustained as such, and, if proved, would only be applicable to the officers of the vessel.

A person employed as a laborer, to discharge the cargo of a vessel, does not stand in the relation of a bailee to the property of which the cargo consists.

THE defendant was indicted and tried in the municipal court for the city of Boston, with one Charles Crocker, for stealing half a ton of pig iron, of the alleged value of $19·00, the property of William E. Coffin and another. Both defendants being convicted, Doane brought his case to this court, on exceptions taken to the rulings and instructions of the judge of the municipal court.

The bill of exceptions stated, that,

On the trial, evidence was introduced on the part of the prosecution, tending to show that a large quantity — several tons — of pig iron, belonging to William E. Coffin and another, had been shipped on board the bark Ida, consigned to them at Boston; that the bark arrived at Boston; that the iron was discharged therefrom, and landed on one of the wharves of the city; and that a part of the same, namely, half a ton or thereabouts, was very shortly afterwards found in the possession of the defendants, under circumstances from which the jury might, if unexplained, infer a larceny thereof by them. A portion of the iron, consisting in part of long and in part of short pieces or pigs, so found in the possession of the defendants, was brought into court and exhibited to the jury.

The defendants, in order to explain their possession of the iron, and to rebut any inference therefrom of a larceny

1 *

committed by them, alleged a purchase of the same from one or more of the mates or officers of the bark Ida; and, to establish this explanation by proof, introduced a witness, who testified that he was employed together with Crocker, one of the defendants, to assist in discharging the bark Ida; that after the cargo had been all taken out, and landed on the wharf, except a few short pieces, like those in court, they came on deck, leaving the second mate in the hold; that Crocker then slung a barrel, and let it down into the hold, and the second mate put some of the scrap iron (the short pieces) into it; that the witness and another man helped to hoist the barrel, which was taken forward by Crocker, and the contents placed on the top of some wood, which was lying on the deck there; that the barrel was sent down a second time, and returned in the same manner; that the first mate was about there whilst the cargo was discharging; that Doane, the defendant, was on board the bark, the same afternoon; that the witness and the others employed in discharging the vessel had been dismissed, before the iron was hoisted out of the hold in the manner above mentioned; and that he heard nothing stated as to any remnants in the hold being sold, or any thing of the kind.

The defendant then called a witness, who had been at sea for seven years in the capacity of captain and mate, to whom he proposed the following question: " Whether the officers of a vessel considered themselves entitled to any part of the cargo, under any circumstances." This question was proposed with a view to show "a custom for the officers of ships to appropriate to themselves a part — a small part — of the cargo," and, being objected to, was ruled to be inadmissible. The defendant then proposed to the witness the following question: " Whether he had known instances of mates having appropriated parts of cargo under a claim of right, and, if so, what, and what was the claim." This question, being objected to, was also ruled to be inadmissible.

The court, among other instructions to the jury, directed them, that if the officers of the ship fraudulently converted to

Commonwealth *v.* Doane.

their own use the whole of the said iron so shipped, before discharging the same, such conversion would not be larceny in them, or in persons in privity with them; but if, when the iron was discharged, they had separated a portion of it from the mass, and had retained the portion so separated in the hold of the vessel, for the purpose of subsequently converting the same fraudulently to their own use, and had so converted it, this would be larceny in them, and in those in privity with them in such transaction.

There was no evidence that the iron was bound in parcels or boxes, or that the bars thereof were in any way bound together.

*R. F. Fuller*, for the defendant, argued: 1. That the facts in evidence were sufficient to authorize the jury to infer, that the defendants obtained possession of the iron, with the privity and consent of the mates of the vessel.

2. If so taken, the defendants were bailees, and could not commit a larceny of that part of the cargo. 2 Russell on Crimes, 1033, 1092; *Commonwealth* v. *Brown*, 4 Mass. 580; *Dame* v. *Baldwin*, 8 Mass. 518.

3. The iron having been delivered to the defendants by persons who had a right to do so, the defendants could not be guilty of larceny in receiving it; to constitute larceny the taking must be *invito domino*; the *dominus*, in this case, was the party in possession. 1 Hale P. C. 507; 2 Russell on Crimes, 1050.

4. The evidence excluded had a tendency to show, that there was no intention on the part of the defendants to steal, and should therefore have been admitted. In a civil case, evidence of a custom cannot be received, unless the custom is reasonable; but in a criminal case, in order to show the intent, the reasonableness of the custom is not material. Roscoe Crim. Evid. 537; 1 Hale P. C. 508, 509; 1 Hume Crim. Law, 72. Where a thing is taken under an honest claim of right, the idea of a felonious intent is excluded *Commonwealth* v. *Weld*, Thacher Crim. Cases, 157.

*S. D. Parker*, for the commonwealth. The evidence of usage was properly excluded on two grounds: 1. As irrele-vant, no foundation being laid for it by the introduction of proof of a sale of the iron to the defendants ; and, 2. As tend-ing to prove an unreasonable, and therefore illegal, usage. *Homer* v. *Dorr*, 10 Mass. 26.

The argument, founded on the supposed character of the mates as bailees, is fallacious ; they were not bailees, any more than are the servants in a hotel, but were mere servants. The authorities to this point, therefore, are not applicable.

The principle of law stated in the instructions is too clear to require any argument.

DEWEY, J. The position taken by the counsel for the defendant assumes, that the facts testified to by the witness introduced on the trial were such as would authorize the jury to find, that the defendants received the possession of the pig iron by a purchase from the mates of the bark Ida; or, if not by a sale, that the taking was with the privity of the officers of the bark ; and thereupon a question is raised, whether a larceny could be committed by the officers of the bark, of pig iron not in boxes, or bound up in parcels ; the counsel for the defendant contending, that in case of possession by a bailee or common carrier, there could be no larceny of the property unless there was an actual breaking open of a cask, or bundle, and a withdrawal of a part from the mass com-mitted to his charge. If it were necessary to examine with particularity this doctrine of conversion by a bailee, and to ascertain the acts that would give a decisive character to such conversion, as properly falling within the class of cases denominated a mere breach of trust, or that of larceny, I apprehend no doubt could arise, as to the instructions here given being sufficiently favorable to the case of one standing in the relation of a bailee of goods.

Treating the case as one of a charge of larceny by the officers of the bark, the court instructed the jury, that if the officers of the bark fraudulently converted to their own use the whole of the iron, such conversion would not be larceny in

them, or persons in privity with them ; but if they had separated a portion from the mass, and had retained the portion so separated, for the purpose of fraudulently converting the same to their own use, and had so converted it, this would be a larceny in them and those acting in privity with them ir such acts. This was an instruction sufficiently favorable t, the defendants, if they had connected themselves with the officers of the bark, and if the officers (meaning by this designation the mates) could properly have been considered as the bailees of this property. But the greater difficulty, on the part of the defendants, in sustaining their defence upon the distinction between cases of breach of trust and larceny, arises from the fact that the defendants were not bailees, or standing in any such relation to this property. One of them had no connection with the bark, even as one of the crew. It is not a case, therefore, raising any question of the technical distinction between larceny and breach of trust. No foundation was laid for raising that question.

Independent of the question already stated, arising upon the general instructions of the presiding judge, it is further, however, insisted, that a new trial should be granted for certain alleged erroneous rulings, as to the competency of evidence offered by the defendants. 1st. As to the evidence offered to prove a custom for the officers of vessels to appropriate to themselves a small part of the cargo. The proposed evidence was objectionable : 1. Because the defendants were not officers of the bark, and therefore the custom was inapplicable to the case, if it would have furnished a justification to the officers of the bark, had they been on trial for the offence. 2. But such a custom could not be sustained as a legal custom. It wants the elements of a legal custom. A custom to take another man's property and convert it to one's own use, without consent, or giving an equivalent, is a custom bad on its face, and cannot be supported. Nor was the second question proposed to be put to the witness competent evidence. The inquiry was, whether instances had not fallen under the observation of the witness of mates of

vessels having appropriated parts of cargoes under a claim of right, and, if so, what was the claim. It surely will not be contended, that the fact, that similar offences have been committed by others, would constitute any legal defence for the parties charged in the present case, and to that extent the question was clearly incompetent.

If it were intended to raise the question, how far it would be competent to show that such rights had been claimed by other mates, with a view to show that this was taken under a supposed right or claim of title, and not feloniously, the question, if the mate had been on trial, might have become material and pertinent; as such practice, and such claim by others, standing in the same relation to the property, might have laid a foundation for the argument, that there was no *felonious* intent, and that a party taking the property under a claim of right, though a mistaken one, might place his defence upon that ground. But the defendants could not sustain a defence upon this ground, as they stood in no such relation to this property, and could have asserted no right under such custom.

If the defendants could show a *bona fide* purchase by them of this property, that would have availed them without any such proof of acts of other mates. If they did not purchase the property of any body, but feloniously converted the same to their own use, then the proposed evidence could not avail them, if in the case.

We perceive no ground for sustaining any of the exceptions taken, and they are therefore overruled.

*Judgment is to be rendered on the verdict.*